Jacqueline C. **JOHNSON,** et al., Appellants,

v.

Karen G. **LEVY,** Appellee.

No. 01–86–0431–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 12, 1987.

---

Michael D. Miller, Law Office of Norwood J. Ruiz, Galveston, for appellants.

Patrick Reilly, Galveston, for appellee.

Before DUGGAN, HOYT and LEVY, JJ.

## OPINION

HOYT, Justice.

This is an appeal from a summary judgment involving the issue of the applicability of findings of fact, made in a bankruptcy hearing, to the present dispute.

On June 7, 1979, appellants, Carol M. Johnson, Elmo M. Johnson, Jacqueline C. Johnson, and Jacqueline C. Johnson Trust ("Johnsons"), entered into a contract for deed with appellee, Karen G. Levy, whereby the Johnsons were to purchase two tracts of land in Galveston, Texas. The contract called for monthly installments payable prior to the 10th of each month and for the transfer of title when the entire purchase price had been paid.

Prior to the incident made the basis of this suit, Levy was employed by Elmo M. Johnson, Sr. as a bookkeeper in his law office. Part of her duties involved transacting the financial business of the office. Johnson had represented Levy and her husband in various matters and, in fact, he drafted the contract in question.

In October 1984, payment was not made timely. Levy was out of town on vacation from October 8 to October 12. After she returned, the Johnsons tendered the October payment to her, on October 15th, which she promptly refused. On the same day, Levy sent the Johnsons notice of cancellation of the contract. Thereafter, Levy and Elmo Johnson, on behalf of the Johnsons, tried to negotiate a reinstatement of the contract, but all efforts were to no avail.

Nevertheless, the Johnsons desired and Levy permitted payment to her with the written understanding that acceptance by her of any payment would "not constitute a waiver of any legal right or remedy of any party to this contract or dispute."

The November payment was not made, apparently because the Johnsons stopped payment on the check. No January payment was made, and on January 10, the Johnsons informed Levy, through her attorney, of their intention to "accept the cancellation" of the contract. No further attempts to make payments were made under the contract.

For some time, the Johnsons had been trying to negotiate a sale of the properties. A sale of the University Street tract was discussed, and a proposed price of $275,000 was reached, but the sale fell through, according to the Johnsons, because of the dispute between them and Levy.

The Johnsons filed a Chapter XI bankruptcy proceeding on October 24, 1984. Levy subsequently filed a motion for relief from the automatic stay, and upon hearing, the bankruptcy court made findings of fact and conclusions of law that it incorporated in its order granting Levy's motion. The threshold question before the bankruptcy court was "whether Levy cancelled the contract or whether it is still effective between the parties."

Essentially, the bankruptcy court found: (1) that Levy had the option under the contract to declare the entire indebtedness due and enforce collection, to accept late payment with penalty, or to declare the contract cancelled and of no further force and effect; (2) that Levy chose to cancel the contract and gave notice in the manner required by the contract; and (3) that the acceptance of the October and December payments did not constitute a waiver of any legal remedy by Levy. The court concluded that Levy cancelled the contract on October 15, 1984, and that cancellation was not vitiated by Levy's alleged responsibility for preparing the October check to herself.

On or about November 15, 1985, the Johnsons filed the instant case. They asked that Levy be required to specifically perform the contract for deed and alleged that Levy's cancellation of the contract constituted a tortious interference of their contractual relationship with a third party regarding sale of one of the two parcels of real property. Finally, the Johnsons alleged usury violations. The Johnsons also argued that Levy had constantly accepted late installment payments and had thus waived any right to complain of a similar late payment in October, 1984.

Levy filed a motion to sever all other causes of action from the usury claim and filed a motion for summary judgment on the severed causes of action. She argued in her motion that all of the causes of action alleged by the Johnsons, other than the cause of action for usury, either had been litigated or could have been litigated by the Johnsons in the bankruptcy proceeding. The Johnsons did not file a written response to Levy's motion for summary judgment and the court subsequently granted Levy's summary judgment request after severing the usury claim.

In their first point of error, the Johnsons contend that "the order entered after the hearing in the bankruptcy case on Levy's motion for relief from the automatic stay was not a res judicata determination of the issues presented at that hearing."

The Johnsons contend that the bankruptcy hearing was conducted pursuant to 11 U.S.C.A. § 362(d) (West 1979), and that hearings conducted pursuant to § 362(d) through (g) are distinguishable from adversary proceedings governed by Part VII of the bankruptcy rules. They agree that only a proceeding conducted pursuant to Part VII of the bankruptcy rule is the type of full and fair adjudication that should be given res judicata effect; consequently, they urge, the expedited motion practice called for by § 362 should not.

The Johnsons conclude that "given the expressed legislative intent behind the motion to lift stay, the relaxed motion practice set up for hearing those motions, the rulings of the courts which stress the informality of the procedure, and the fact that it is not set up for dispositive adjudication of the validity of liens, it is difficult to accept that such a hearing has now been held to preclude litigation of a claim for relief from a forfeiture of interests in properties which are worth at least $150,000."

Levy contends that there is nothing in the record to reflect that the motion for

relief was under 11 U.S.C.A. § 362, and asserts that this Court's consideration should be limited to: (a) whether the Johnsons were given a full and fair hearing and had an opportunity to present evidence establishing that she (Levy) improperly cancelled the contract; and (b) whether the issues that were heard by the bankruptcy court are the same issues presented in the instant case.

 Res judicata, or claims preclusion, bars relitigation in a subsequent suit of those claims or defenses that were raised, or that could have been raised, in a prior suit. *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816 (Tex.1984). Application of this principle requires an identity of parties, issues, and subject matter between the prior suit and the subsequent suit. *Jeanes v. Henderson*, 688 S.W.2d 100 (Tex.1985). Collateral estoppel, on the other hand, is issue preclusion and does not require identity or mutuality of parties in the prior and subsequent suit. *Myrick v. Moody National Bank*, 590 S.W.2d 766, 769 (Tex.Civ. App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.). Its effect is to preclude relitigation of *facts* and *issues* actually litigated in and *essential* to the judgment. *Bonniwell*, 663 S.W.2d 818. Both of these doctrines require some degree of finality before a judgment can result in either claim or issue preclusion. *See Restatement (Second) of the Law of Judgments* § 13 (1982).

Section 362(d) of the Bankruptcy Code states in pertinent part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from a stay provided under subsection (a) of this section....

11 U.S.C.A. § 362(d). For instruction regarding the intended subject matter limitation placed on the bankruptcy courts by Congress, we turn to Notes of Committee on the Judiciary, Senate Report No. 95–989, which state in relevant part:

> The action commenced by the party seeking relief from the stay is referred to as a motion to make it clear that at the expedited hearing under subsection (e), and at hearings on relief from the stay, *the only issue will be the lack of adequate protection, the debtor's equity in the property, and the necessity of the property to an effective reorganization of the debtor, or the existence of other cause for relief from the stay.* This hearing will not be the appropriate time at which to bring in other issues, such as counterclaims against the creditor, which, although relevant to the question of the amount of the debt, concern largely collateral or unrelated matters.... [C]ounterclaims are not to be handled in the summary fashion that the preliminary hearing under this provision will be. Rather, they will be the subject of more complete proceedings by the trustee to recover property of the estate or to object to the allowance of a claim. However, this would not preclude the party seeking continuance of the stay from presenting evidence on the existence of claims which the court may consider in exercising its discretion. *What is precluded is a determination of such collateral claims on the merits at the hearing.*

H.R.Rep. No. 595, 95th Cong., 1st Sess. 344 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787 (Emphasis supplied).

 In the case at bar, Levy's summary judgment proof consisted of the order from the bankruptcy court disposing of her motion for relief from the automatic stay. The Johnsons failed to file a response to Levy's motion for summary judgment, but, failure to file a response does not authorize summary judgment by default. *Combs v. Fantastic Homes, Inc.*, 584 S.W.2d 340 (Tex.Civ.App.—Dallas), *writ ref'd n.r.e. per curiam*, 596 S.W.2d 502 (Tex.1979). Where the non-movant fails to respond, the sole issue on appeal is whether the movant's summary judgment proof was sufficient as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546 (Tex.1985). Considering the limited summary judgment proof in this case, we hold it was insufficient.

 Without a showing both that (1) a full and fair hearing was afforded on issues other than the primary issue of lack of adequate protection for the debtor's eq-

uity in the property, and (2) there was an affirmative intent by the bankruptcy court to entertain and dispose of collateral issues, we conclude that any collateral fact, issue, or claim raised was not essential to disposition of the primary issue and, consequently, was not precluded in a subsequent suit. *Bonniwell* 663 S.W.2d at 818; *Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361 (Tex.1971); *Ogletre v. Crates*, 363 S.W.2d 431 (Tex.1963). Our conclusion is supported by current trends of bankruptcy courts to refine and limit their jurisdiction. *See In re Essex Properties, LTD.*, 430 F.Supp. 1112 (N.D.Cal.1977).

The appellants' first point of error is sustained.

Because Levy's summary judgment proof was insufficient as a matter of law, it is unnecessary for us to entertain the Johnsons' second point of error.

The judgment of the trial court is reversed, and the cause remanded for trial.